Hovhannes Bayburtski
CA Bar No. 348506
Vichi Law, PC
12400 Ventura Blvd, #411
Studio City, CA 91604
Telephone:(310)901-9112
Email: hovbaylaw@gmail.com; globallawusa@gmail.com
Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Yahong SUN<br>Petitioner,<br>v.<br>James JANECHA, the Warden of the Adelanto ICE Processing Center;<br><br>Jaime RIOS, Field Office Director, Adelanto, Office of Detention and Removal, U.S. Immigrations and Customs Enforcement, U.S. Department of Homeland Security;<br><br>Todd M. LYONS, Acting Director, Immigration and Customs Enforcement, U. S. Department of Homeland Security;<br><br>Markwayne MULLIN, in the Official Capacity, Secretary, U.S. Department of Homeland Security; and<br><br>Todd BLANCHE, in the Official Capacity, Attorney General of the United States.<br>Respondents | NO.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Challenge to Unlawful Incarceration Under Color of Immigration Detention Statutes;<br><br>Request for Declaratory and Injunctive Relief<br><br>**IMMEDIATE RELEASE REQUESTED** |

## I. INTRODUCTION

1. Petitioner Yahong Sun is a 51-year-old national of the People's Republic of China who fled religious persecution, came to the United States lawfully, and has done everything our immigration laws ask of an asylum seeker. She was inspected and admitted at Los Angeles International Airport on a valid B-2 visa on March 24, 2024 — a fact DHS records on its own Form

I-213. She filed an affirmative application for asylum with U.S. Citizenship and Immigration Services on June 22, 2024, before her authorized stay expired, gave her biometrics when USCIS told her to, and received employment authorization, under which she has worked lawfully in the United States since December 19, 2024. She owns a home and vehicles in Arcadia, California, pays taxes, raises a minor son who is receiving ongoing medical treatment here and who is a co-applicant on her asylum application, and has no criminal history of any kind, in the United States or anywhere in the world — as ICE's own arrest record states. (Ex. 5 at 1, 3; Ex. 4; Ex. 2, Br. at 2.)

2. On July 31, 2026, at approximately 6:00 a.m., ICE officers arrested Ms. Sun at Los Angeles International Airport. She was not arriving from abroad. She had taken a domestic flight from Anchorage, Alaska to Los Angeles on Alaska Airlines Flight 1563. ICE's own Form I-213 explains how she was found: the Pacific Enforcement Response Center, working with the Transportation Security Administration, referred her name to ICE Enforcement and Removal Operations as a passenger with "an impending flight scheduled." She was traveling openly, under her true name, on a domestic itinerary, using a REAL ID-compliant California driver's license, to and from addresses the Government already had on file. (Ex. 5 at 2, 3.)

3. She was given no notice. She was given no hearing. No judge, no magistrate, and no Immigration Judge — no neutral decision-maker of any kind — reviewed the decision to take away her liberty before it was taken. She has been confined at the Adelanto ICE Processing Center ever since.

4. Ms. Sun was arrested in the interior of the United States, after a purely domestic flight, more than two years after she was lawfully admitted. She never departed the United States and never presented herself at any port of entry seeking admission. She is therefore not an "arriving alien" or an applicant for admission under 8 U.S.C. § 1225. DHS itself charged her as a deportable alien under INA § 237(a)(1)(B), and the Immigration Judge's own order rests on 8 C.F.R. § 1236 and INA § 236(a). (Ex. 5 at 2, 3; Ex. 2, Order at 1.) Her detention is discretionary under 8 U.S.C. § 1226(a). See *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026).*

5. "[A]bsent the necessity of quick action by the [Government] or the impracticality of providing any pre-deprivation process, a post-deprivation hearing would be constitutionally inadequate." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (citation and quotation

marks omitted). Nothing about this arrest was quick, unexpected, or impracticable to plan around. Respondents knew Ms. Sun’s name, her home address, her pending asylum application, her flight number, and her arrival time — days in advance, from a passenger manifest — and they staffed the operation with roughly ten officers, whom the Form I-213 names. (Ex. 5 at 2.) They had every opportunity to give her notice and an opportunity to be heard before seizing her. They gave her neither.

6. The bond hearing Ms. Sun later received did not cure that violation, and it could not have. “[A] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing,” and “the appropriate remedy for the deprivation is release from custody.” *Mikayelyan v. Giles*, No. 5:26-cv-01035-SSS-DFM, Dkt. No. 19, at 3–4 (C.D. Cal. May 20, 2026); *Zaitsev v. Warden, Adelanto*, 2026 WL 1047942, at *7 (C.D. Cal. Apr. 15, 2026). Such a hearing “cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.”* E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). That is true even where, as in* Mikayelyan*, the petitioner had already received a bond hearing and been denied bond. Dkt. No. 19, at 4.*

7. Independently, the hearing Ms. Sun received was not the individualized adjudication the Constitution requires. On August 25, 2026, Immigration Judge Steven Marcus denied bond on a pre-printed checkbox form whose entire substantive reasoning is one sentence: “Flight risk which no amount of bond, even if coupled with alternatives to detention, is sufficient to mitigate significant likelihood of absconding.” (Ex. 2, Order at 1.) Petitioner does not ask this Court to infer that those twenty-three words were chosen for her. She attaches the proof that they were not. Exhibit 3 collects seven bond denial orders entered by the same Immigration Judge at the same court; six of them — every order in the compendium entered on or after July 24, 2026 — contain that identical sentence, word for word, together with the identical pre-printed assurance that “[t]he Court conducted an individualized bond and custody redetermination hearing.” Ms. Sun’s order is the seventh. Two of the six issued on a single day, August 21, 2026, to two unrelated respondents represented by two different attorneys, and are identical to each other and to hers. (Ex. 3, Tabs 3-A, 3-G.) Those respondents share no immigration history, no evidentiary record, and no counsel with Ms. Sun. What they share is twenty-three words. A finding that does not vary when the facts vary is not a finding about the facts.

8. Petitioner does not ask this Court to order another bond hearing, and does not consent to one in lieu of release. She asks this Court to issue the writ and order her immediate release on reasonable conditions of supervision, and to bar Respondents from re-detaining her absent notice and a constitutionally adequate pre-deprivation hearing before a neutral adjudicator.

## II. JURISDICTION

9. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus); U.S. Const. art. I, § 9, cl. 2 (the Suspension Clause); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1651 (the All Writs Act); and 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act). Petitioner is "in custody under or by color of the authority of the United States" and "in custody in violation of the Constitution or laws … of the United States." 28 U.S.C. § 2241(c)(1), (c)(3).

10. Federal courts retain jurisdiction under § 2241 to review the constitutionality of immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *INS v. St. Cyr*, 533 U.S. 289, 305 (2001). "[T]he writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). This Petition challenges only the lawfulness of Petitioner's custody. It does not challenge a final order of removal — none exists. The Executive Office for Immigration Review's own Automated Case Information system reports that "This case is pending," that "No appeal was received for this case," and that Petitioner's next master hearing before Immigration Judge Marcus is set for September 1, 2026 at 1:00 p.m. (Ex. 1.) The jurisdiction-channeling provisions of 8 U.S.C. § 1252 therefore do not bar this action. See *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018).

11. Title 8 U.S.C. § 1226(e) does not withdraw jurisdiction over the claims pleaded here. Section 1226(e) removes review of the Attorney General's discretionary judgment regarding detention or release; it "does not preclude challenges [to] the statutory framework that permits [the alien's] detention without bail." *Jennings*, 583 U.S. at 295 (quoting *Demore*, 538 U.S. at 517). Petitioner does not ask this Court to reweigh discretion. She challenges the procedures: the absence of any pre-deprivation process, the absence of any individualized assessment, the failure to place the burden on the Government, the failure to consider ability to pay or alternatives to detention, and the absence of a neutral adjudicator.

12. The Ninth Circuit has resolved the point. *Martinez v. Clark* holds that § 1226(e) "restricts jurisdiction only with respect to the executive's exercise of discretion but that discretionary judgment does not include constitutional claims or questions of law," and that whether a noncitizen is a flight risk or a danger "is a mixed question of law and fact and is reviewable as a 'question of law.'" 124 F.4th 775, 779, 781–82 (9th Cir. 2024); accord *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057–58 (9th Cir. 2008).

13. The Court is directed to grant the writ or issue an order to show cause "forthwith," 28 U.S.C. § 2243, and to give habeas petitions "special, preferential consideration to ensure expeditious hearing and determination." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

## III. VENUE

14. Venue is proper in this district. A habeas petition challenging present physical confinement must be filed in the district of confinement and name the petitioner's immediate custodian. *Rumsfeld v. Padilla*, 542 U.S. 426, 442–47 (2004). Petitioner is detained at the Adelanto ICE Processing Center in San Bernardino County, which lies within the Central District of California. 28 U.S.C. §§ 84(c), 2241(a).

## IV. PARTIES

15. Petitioner Yahong Sun is a native and citizen of the People's Republic of China, born February 19, 1975. She is detained at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, CA 92301, under A# 234-540-344. (Ex. 5 at 1.)

16. Respondent James Janecha is the Warden of the Adelanto ICE Processing Center and is Petitioner's immediate custodian, with day-to-day control over the facility where she is confined. *Padilla*, 542 U.S. at 435.

17. Respondent Jaime Rios is the Field Office Director of the ICE Los Angeles Field Office, Enforcement and Removal Operations, and is the ICE official with authority over Petitioner's detention and custody determinations. He is sued in his official capacity.

18. Respondent Todd M. Lyons is the Acting Director of U.S. Immigration and Customs Enforcement and is sued in his official capacity.

19. Respondent Markwayne Mullin is the Secretary of Homeland Security and is sued in his official capacity. DHS encompasses ICE and is charged with administering and enforcing the immigration laws. See 8 U.S.C. § 1103(a).

20. Respondent Todd Blanche is the Attorney General of the United States and is sued in his official capacity. The Attorney General has authority over the immigration courts and the Board of Immigration Appeals through the Executive Office for Immigration Review.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

21. No statutory exhaustion requirement applies to a § 2241 petition challenging the constitutionality of immigration detention, and judicially created exhaustion is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Exhaustion may be excused where administrative remedies are inadequate or not efficacious, pursuit would be futile, irreparable injury will result, or the proceedings would be void. *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

22. Each ground applies. The constitutional injury Petitioner alleges — deprivation of liberty without pre-deprivation process — is one the immigration courts have no jurisdiction to adjudicate and no power to remedy. "[N]either the Immigration Judge nor this Board may rule on the constitutionality of the statutes that we administer." *In re Rodriguez-Carrillo*, 22 I. & N. Dec. 1031, 1035 (BIA 1999); see also *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) ("Constitutional claims are generally excepted from the exhaustion requirement."). Exhaustion is excused where "an administrative remedy may be inadequate because of some doubt as to whether the agency was empowered to grant effective relief." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992).

23. An appeal to the Board would also be futile and would compound the injury. The only relief the agency can offer is another custody redetermination — that is, more of the after-the-fact process that the case law holds insufficient to cure this injury. See *Zaitsev*, 2026 WL 1047942, at *7;* Zepeda Perez v. Santacruz*, 2026 WL 980492, at* 5 (C.D. Cal. Apr. 9, 2026). And as Exhibit 3 shows, the deficiency here is not one adjudicator's isolated error in one case; it is a pattern spanning

at least eight respondents. Directing Ms. Sun back into the channel that produced the pattern is not a remedy; it is a delay. A Board appeal takes months she does not have; her notice of appeal is not even due until September 24, 2026, and EOIR's docket shows no appeal received. (Ex. 2, Order at 2; Ex. 1.) The Ninth Circuit excuses exhaustion where "requiring it would cause prejudice due to an unreasonable delay." *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003). Ms. Sun has been detained since July 31, 2026. Every additional day is a separate irreparable injury that no later administrative decision can undo.

## VI. THE EVIDENCE SUBMITTED WITH THIS PETITION

24. Petitioner submits five exhibits. Every material factual allegation below is drawn from them, and the great majority is drawn from documents the Government itself created, filed, or signed.

Exhibit 1 — Executive Office for Immigration Review, Automated Case Information, *In re Sun, Yahong*, A# 234-540-344: case pending, no BIA appeal received, next master hearing September 1, 2026 at 1:00 p.m. before Immigration Judge Steven Marcus.

Exhibit 2 — The custody record. It contains (i) the Order of the Immigration Judge denying custody redetermination, entered August 25, 2026 (Marcus, IJ), cited herein as "Ex. 2, Order"; and (ii) Respondent's Bond Determination Request, filed with the Adelanto Immigration Court on August 13, 2026 and admitted in the custody proceeding as Immigration Court Exhibit 2, cited herein as "Ex. 2, Br." and paginated from its first page. The request was filed with 212 pages of supporting exhibits — the Petitioner's declaration and asylum filing (Ex. A), her employment authorization and tax records (Ex. C), her property and vehicle records (Ex. D), her lease history (Ex. E), the sponsorship commitment of Mark Grunow (Ex. F), her son's medical records (Ex. G), and community character statements (Ex. H) — which are part of the immigration court record and which Petitioner will lodge in full upon the Court's request.

Exhibit 3 — Compendium of bond denial orders issued by Immigration Judge Steven Marcus at the Adelanto Immigration Court, Tabs 3-A through 3-G, with an index summarizing each order's respondent, A-number, date, counsel of record, and stated reason for denial.

Exhibit 4 — U.S. Citizenship and Immigration Services Form I-797C, Notice of Action, dated June 22, 2024, acknowledging receipt of Petitioner's Form I-589 Application for Asylum and for Withholding of Removal and listing her minor son, Ruipeng Liu, A# 234-540-345, as a co-applicant.

Exhibit 5 — U.S. Department of Homeland Security Form I-213, Record of Deportable/Inadmissible Alien, with Form I-831 continuation pages, prepared July 31, 2026 by Deportation Officer Waseem (M. 8554), uploaded by DHS to the Adelanto Immigration Court on August 24, 2026 and admitted in the custody proceeding as Immigration Court Exhibit 4. Cited to the form's own page numbers.

## VII. STATEMENT OF FACTS

### A. Lawful Admission, Pending Asylum Application, and Lawful Employment.

25. Petitioner is a native and citizen of the People's Republic of China, born February 19, 1975. She fled China because she suffered past persecution on account of her Christian faith and fears future persecution if returned. She has described, under penalty of perjury and in the declaration filed with her bond request, a March 12, 2023 police raid on her house church at which officers struck her, detained the congregation, and compelled her to sign a statement and to report back with the names of other participants. She left China on March 26, 2023. Her asylum claim rests on that persecution, and it remains pending. (Ex. 2, Br. at 3; Ex. 5 at 1.)

26. On March 24, 2024, Petitioner was inspected and lawfully admitted to the United States at Los Angeles International Airport on a valid B-2 nonimmigrant visa. She did not enter without inspection. DHS's own Form I-213 so records: "On March 24, 2024, SUN entered the United States via Los Angeles International Airport on a B2 visa and was admitted by US Customs and Border Protection Officers," and the form's face lists her last entry as "03/24/2024 … LAX, B2-Visitor For Pleasure." (Ex. 5 at 1, 3; Ex. 2, Br. at 2.)

27. On June 22, 2024 — within one year of entry and before her authorized stay expired on September 23, 2024 — Petitioner filed an affirmative Form I-589 Application for Asylum and for Withholding of Removal with USCIS. USCIS issued a Form I-797C receipt notice the same day, confirming that her "complete Form I-589, Application for Asylum and for Withholding of Removal was received and is pending as of 06/22/2024." DHS's Form I-213 records the same filing date and

confirms that "SUN has a pending I-589 with the United States Citizenship and Immigration Services (USCIS)." That application remains pending and has never been denied, withdrawn, or found frivolous. (Ex. 4; Ex. 5 at 3; Ex. 2, Br. at 2.)

28. The USCIS receipt notice lists two applicants on that one application: Petitioner, A# 234-540-344, and her minor son, Ruipeng Liu, A# 234-540-345. (Ex. 4.) Her asylum claim and her son's are the same claim.

29. Petitioner complied with every step USCIS asked of her. When USCIS issued an Application Support Center biometrics notice, she appeared and gave her biometrics on July 8, 2024. She has never failed to appear for any immigration appointment or proceeding. (Ex. 2, Br. at 2.)

30. On the strength of her pending application, USCIS granted Petitioner employment authorization in category (c)(8). Her Employment Authorization Document is valid from December 19, 2024 through December 18, 2029. She has worked lawfully in the United States under that authorization ever since, as the owner of a rental car business, and has filed for an extension of time to file her 2025 federal income tax return. (Ex. 2, Br. at 2.)

31. Petitioner's ties to this community are deep and documented. She leased and paid for an apartment in Arcadia, California from March 25, 2025, extended through September 30, 2026, and she has since purchased a home in Arcadia. She owns registered vehicles in her own name. Her United States address — 56 El Dorado Street, Apt. B, Arcadia, California 91006 — is the address printed on the face of ICE's own Form I-213 and the address to which USCIS mailed her asylum receipt notice. (Ex. 5 at 1; Ex. 4; Ex. 2, Br. at 2, 4.)

32. Petitioner's minor son, Ruipeng Liu, lives with her in Arcadia and is receiving ongoing medical treatment at a health center in Arcadia, California. He has written to the Court asking that his mother be released. Her detention has separated him from his only parent in the United States and from the person who manages his care. (Ex. 2, Br. at 2; Ex. 4.)

33. Mr. Mark Grunow, a United States citizen and an elder at Petitioner's church, has committed in writing to sponsor Petitioner upon release and to provide financial support if needed; he has submitted his passport, California driver's license, and 2025 federal tax return. Five additional community members submitted statements attesting to Petitioner's good moral character. (Ex. 2, Br. at 2, 4.)

34. Petitioner has no criminal history of any kind — not a conviction, not an arrest, not a charge — in the United States, in China, or anywhere in the world. ICE's own Form I-213 records, under the heading "CRIMINAL HISTORY," the single line: "No criminal convictions." The same form adds that "SUN has no criminal convictions currently under appeal" and that "SUN claims no gang affiliation," and its "Criminal Record" field is blank. (Ex. 5 at 1, 3; Ex. 2, Br. at 5.) She had never been detained before July 31, 2026.

**B. Respondents Seized Petitioner Off a Domestic Flight — Without Notice, Without a Warrant From Any Judge, and Without Any Hearing.**

35. On July 31, 2026, Petitioner was a ticketed passenger on Alaska Airlines Flight 1563, a domestic flight from Anchorage, Alaska to Los Angeles, California. She had not left the United States. She was not seeking admission. She was flying from one American city to another. (Ex. 5 at 2.)

36. Respondents located her through a routine data referral, not through any investigation of danger or flight. ICE's Form I-213 states that "[t]he Pacific Enforcement Response Center (PERC) in conjunction with Transportation Security Administration (TSA) refers actionable leads to Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) regarding … aliens that appear to have an impending flight scheduled," that "SUN was identified by the PERC as an … alien having an impending flight scheduled," and that "SUN was scheduled to arrive at the Los Angeles International Airport (LAX) from Anchorage, AK, via Alaska Airlines (Flight# 1563)." (Ex. 5 at 2.)

37. That passage disposes of the exigency question. Respondents knew, in advance and to the minute, where Petitioner would be. They knew her name, her date of birth, her A-number, her home address in Arcadia, her passport number, her I-94 number, her REAL ID-compliant California driver's license number, and her pending asylum application — all of which appear on the Form I-213 they prepared. (Ex. 5 at 1, 3.) They had time to assemble a team: the form names roughly ten officers as arresting agents. (Ex. 5 at 2.) Providing notice and a hearing before any arrest was entirely practicable. Respondents simply did not do it.

38. On July 31, 2026, at 0600 hours, ICE ERO officers "located and apprehended SUN at LAX" and transported her to the ICE hold room at 300 North Los Angeles Street, Los Angeles.

The Form I-213 records an “Initial time: 0600” and an “End time: 0630,” and states that “Consent was not required: SUN was arrested in a public space.” The arrest was effected without a judicial warrant, without prior notice, and without a hearing. No judge, no magistrate, and no Immigration Judge reviewed the decision to deprive her of her liberty before it was taken. (Ex. 5 at 2, 3.)

39. DHS served Petitioner with a Form I-862 Notice to Appear charging her as deportable under INA § 237(a)(1)(B) as a nonimmigrant who remained longer than permitted. The Form I-213 states the disposition in the Government’s own words: “Los Angeles ERO served [a Notice to] Appear, form I-862, pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act, Nonimmigrant Overstay. SUN will be held in custody pending a hearing before an immigration judge.” That charge is an admission by the Government that Petitioner was admitted. A charge under § 237 lies only against a noncitizen who has been admitted; applicants for admission are charged under § 212. Petitioner is accordingly not an arriving alien and is not subject to mandatory detention. Her detention is discretionary under 8 U.S.C. § 1226(a). (Ex. 5 at 3.)

40. Petitioner was transported to the Adelanto ICE Processing Center, where she has remained in continuous custody since July 31, 2026.

41. The manner of Petitioner’s arrest is itself powerful evidence that she is not a flight risk. A person who intends to abscond does not book a domestic flight in her own legal name, present a government-issued REAL ID at a TSA checkpoint, and fly into the second-largest airport in the United States. Ms. Sun did exactly that, having lived openly for more than two years at an address on file with the Government, holding a work permit issued by the Government, on the strength of an application she filed with the Government and has never abandoned.

**C. The Government’s Own Arrest Record Was Before the Immigration Judge, and Its Recitals Are Contradicted by the Government’s Own Documents.**

42. Respondents put the Form I-213 into evidence themselves. DHS uploaded it to the Adelanto Immigration Court on August 24, 2026 at 9:19 a.m. — the day before the bond hearing — and the court admitted it as Immigration Court Exhibit 4. (Ex. 5.) Petitioner’s Bond Determination Request and its 212 pages of exhibits had been filed twelve days earlier, on August 13, 2026, and were admitted as Immigration Court Exhibit 2. (Ex. 2, Br.) Both were in evidence before Immigration Judge Marcus when he signed the August 25, 2026 order.

43. Three recitals on the face of that form warrant a word, because each is contradicted by a document the Government itself issued. The form states, under "Number and Nationality of Minor Children," the word "None," and states in its narrative that "Child: Subject does not have children or dependents." Ms. Sun has a minor son — and USCIS's own receipt notice for her asylum application lists that son, Ruipeng Liu, A# 234-540-345, as a co-applicant on the very application the same Form I-213 acknowledges is pending. (Compare Ex. 5 at 1 with Ex. 4.) The form lists her "Type of Employment" as "Unemployed or Retired," with the "Salary" field blank, though she holds a federal work permit valid through 2029 and owns and operates a rental car business. And the form recites "Monies/Property in U.S. Not in Immediate Possession: None Claimed," though she owns a home and registered vehicles in Arcadia. (Ex. 5 at 1; Ex. 2, Br. at 2, 4.)

44. These are not close calls about disputed facts. They are pre-printed and default entries on a form, contradicted by USCIS's own records and by 212 pages of documentary evidence that were before the same court. Where the form's boilerplate conflicts with the documentary record, the documents govern. What the form says against the Government's own interest — "CRIMINAL HISTORY: No criminal convictions" — does not.

**D. Removal Proceedings and the August 25, 2026 Bond Denial.**

45. Petitioner is in removal proceedings before the Immigration Court at 10250 Rancho Road, Suite 201A, Adelanto, California. Her case is pending; no decision has issued on the merits, no appeal from any merits decision is on file, and no final order of removal exists. EOIR's Automated Case Information system so states and shows her next master hearing set for September 1, 2026 at 1:00 p.m., internet-based, before Immigration Judge Steven Marcus. (Ex. 1.) She intends to appear at that hearing and at every hearing, and to continue prosecuting her asylum claim.

46. On August 13, 2026, Petitioner, through immigration counsel Gihan L. Thomas — a Certified Specialist in Immigration and Nationality Law certified by the State Bar of California Board of Legal Specialization — filed a Bond Determination Request supported by 212 pages of exhibits, supplemented on August 18, 2026. The submission documented her lawful admission, her pending asylum application, her employment authorization, her tax filings, her home and vehicle ownership, her lease history, her son's presence and ongoing medical treatment, a written sponsorship commitment from a United States citizen, five community character statements, and the

complete absence of any criminal record. It was admitted as Immigration Court Exhibit 2. (Ex. 2, Br.)

47. On August 25, 2026, Immigration Judge Steven Marcus denied bond in its entirety. (Ex. 2, Order.) The order is a pre-printed checkbox form. Its entire substantive reasoning is one sentence: "Flight risk which no amount of bond, even if coupled with alternatives to detention, is sufficient to mitigate significant likelihood of absconding."

48. Everything else on the order is language printed on the form itself — a recitation that "[t]he Court conducted an individualized bond and custody redetermination hearing in this matter," that it "considered all arguments and evidence presented from both sides," and that it "orally articulated its findings" into the Digital Audio Recording system. The order makes no factual findings. It cites no evidence. It does not identify what, if anything, DHS presented. It states no bond amount. It names no alternative to detention. It does not mention Ms. Sun's lawful admission, her pending asylum application, her employment authorization, her home, her vehicles, her taxes, her United States citizen sponsor, her minor son's medical treatment, or her complete absence of any criminal history anywhere in the world. Twelve days of evidence-gathering and 212 pages produced an order that does not acknowledge a single page. (Ex. 2, Order at 1.)

49. Petitioner reserved appeal; DHS waived it. Her notice of appeal to the Board is not due until September 24, 2026, and a Board appeal would take months to decide. (Ex. 2, Order at 2.) She remains detained at Adelanto today.

**E. The Same Immigration Judge Issued the Same Sentence to Seven Different People.**

50. The clearest evidence that a decision was not individualized is that the identical decision issued to someone else. Petitioner need not argue the point; she attaches the orders. Exhibit 3 is a compendium of seven bond denial orders entered by Immigration Judge Steven Marcus at the Adelanto Immigration Court, each reproduced in full behind its own tab, with an index page summarizing them:

51. Tab 3-A: *In re Wei, Ying*, A# 236-066-350, August 21, 2026 (counsel Zhigeng Fu, Diamond Bar). Tab 3-B: *In re Tong, Li*, A# 213-615-073, June 12, 2026 (counsel Zhigeng Fu, Diamond Bar). Tab 3-C: *In re Zhou, Chunwei*, A# 235-522-191, July 24, 2026 (counsel Junmei Wu, Pasadena). Tab 3-D: *In re Tu, Qing*, A# 246-481-887, July 31, 2026 (counsel Jiawei Peng, San Jose).

Tab 3-E: *In re Ma, Lingjun*, A# 242-409-224, August 11, 2026 (counsel Yunchao Song, City of Industry). Tab 3-F: *In re Munkhbat, Urtnasan*, A# 235-489-021, August 14, 2026 (counsel Jeannie Joung, Los Angeles). Tab 3-G: *In re Xiong, Shimei*, A# 242-302-943, August 21, 2026 (counsel Yue Alan Zhang, Monterey Park).

52. Six of those seven — Tabs 3-A and 3-C through 3-G, every order in the compendium entered on or after July 24, 2026 — are word-for-word identical in every respect that matters: the same one-sentence flight-risk finding, followed by the same pre-printed paragraphs reciting that the hearing was "individualized," that all arguments and evidence were "considered," and that findings were "orally articulated" into the DAR system. Not one identifies any evidence, makes a finding of fact, states a bond amount, or names an alternative to detention. Each is signed "MARCUS, STEVEN."

53. Ms. Sun's order, entered August 25, 2026, is the seventh in that sequence and is word-for-word identical to the other six. (Compare Ex. 2, Order with Ex. 3, Tabs 3-A, 3-C through 3-G.)

54. First, the identical orders issue to unrelated people on the same days and in consecutive weeks: July 24, July 31, August 11, August 14, twice on August 21, and again on August 25 — every order counsel has been able to obtain from this judge in that window, and they are the same order. Two of them, Tab 3-A and Tab 3-G, were signed on the very same day for two unrelated respondents represented by two different attorneys. They are indistinguishable.

55. Second, seven different attorneys of record appeared across those seven identical orders. Zhigeng Fu of Diamond Bar, Junmei Wu of Pasadena, Jiawei Peng of San Jose, Yunchao Song of City of Industry, Jeannie Joung of Los Angeles, and Yue Alan Zhang of Monterey Park each represented a different respondent on a different record; Gihan L. Thomas of Los Angeles represented Ms. Sun. Seven separate law offices, briefing seven separate records. Whatever any of them argued made no difference to the text of the ruling.

56. Third, the respondents' circumstances have nothing in common. They differ in nationality — the compendium includes a Mongolian national alongside Chinese nationals — and in immigration history, family composition, length of residence, and the evidence they submitted. Ms. Sun is a homeowner with five years of employment authorization, a United States citizen sponsor, a

minor child in medical treatment, and no criminal history anywhere in the world; nothing about her record resembles the records of the six strangers who received her order. Nothing in any of the seven orders distinguishes one respondent from another, because nothing in any of them describes a respondent at all.

57. Fourth, and most tellingly, the assurance of individualization is itself a template. Tab 3-B, entered June 12, 2026 by the same judge for a respondent represented by the same attorney who later appeared in Tab 3-A, contains no such recitation. It denies bond in a single, differently worded line — "Flight risk for which no amount of bond and alternatives for detention is sufficient to mitigate" — with no claim that an individualized hearing occurred, no reference to the DAR, and no reference to 8 C.F.R. § 1003.19(f). The "individualized … hearing" paragraph appears in none of this judge's orders in the compendium before July 24, 2026 and in every one after, in identical form. A sentence that materializes on a form and thereafter recurs verbatim is not a finding by an adjudicator. It is boilerplate, and this Court need not accept it as anything else.

58. Fifth, this Court has seen one of these orders before. The order at Tab 3-D was filed as an exhibit in another habeas petition in this District. See *Tu v. Warden*, No. 5:26-cv-04343, Dkt. No. 7-2 (C.D. Cal. filed Aug. 10, 2026). The practice documented here is not confined to Ms. Sun's case, and it is not new to this Court.

59. Not similar reasoning. Identical text, across records with nothing in common. That a pre-printed form recites the word "individualized" does not make a hearing individualized.

## VIII. LEGAL ARGUMENT

### A. Petitioner Holds a Protected Liberty Interest, and Due Process Required Notice and a Hearing Before Respondents Seized Her.

60. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). That protection runs to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; accord *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Demore*, 538 U.S. at 523.

61. The Government's discretion to detain noncitizens "is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981. Because Petitioner is a § 1226(a) detainee and not subject to mandatory detention, no statute compelled her seizure. Respondents' decision to take her into custody was a pure exercise of executive discretion over a person living at liberty in the community, working under a federal work permit — and is therefore subject to the full requirements of the Due Process Clause, including its requirement of pre-deprivation process.

62. A noncitizen living at liberty in the United States has a due-process interest in "an opportunity or a hearing *before* [s]he is deprived of any significant protected interest." *R.A.N.O. v. Wofford*, 2026 WL 40507, at *7 (E.D. Cal. Jan. 6, 2026) (emphasis in original); see also* E-M v. Hermosillo*, 2026 WL 883776, at* 6 (D. Or. Mar. 31, 2026); *Singh v. Noem*, 2026 WL 766228, at *9 (D.N.M. Mar. 18, 2026). The rule that process must precede deprivation is the constitutional default.* Logan*, 455 U.S. at 436. Post-deprivation process suffices only in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."* United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) (citation omitted). This is not such a case. Respondents chose the time and place of the encounter off an airline manifest.*

63. Nor did any ICE administrative warrant supply the missing process. The Form I-213 records the disposition as "Warrant of Arrest/Notice to Appear" — a warrant ICE wrote for itself. (Ex. 5 at 1.) "A neutral judge is one of the most basic due process protections." *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001). A warrant the enforcing agency writes for itself is the opposite of neutral review. See *Diouf v. Napolitano*, 634 F.3d 1081, 1091–92 (9th Cir. 2011).

**B. Every Mathews Factor Confirms That Pre-Deprivation Process Was Required.**

64. What process is due is determined by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): the private interest affected; the risk of erroneous deprivation and the value of additional safeguards; and the Government's interest. See generally *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). Each factor favors Petitioner.

65. First, the private interest is at its maximum. Petitioner's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529. Liberty permits her to live in her home, to work under the authorization the Government granted her, to care

for her minor son and manage his medical treatment, to prosecute her asylum claim, and to "form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). "[T]he interest of parents in the care, custody, and control of their children … is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion).

66. Second, the risk of erroneous deprivation from a unilateral ICE arrest reviewed by no one is high, and pre-deprivation safeguards "would greatly reduce the risk" of an erroneous deprivation of liberty. *Singh v. Noem*, 2026 WL 766228, at *9. Had Petitioner been heard before her seizure, she could have presented her lawful admission, her pending asylum application, her five-year employment authorization, her home, her son, her sponsor, and her spotless record. The subsequent course of this case confirms the risk was not theoretical: she presented all of it two weeks later, in 212 pages, and received an order that mentions none of it. The risk is confirmed a second way. The Form I-213 on which Respondents acted recites that Ms. Sun has no children, no employment, and no property in the United States — three propositions the Government's own USCIS records and her documentary evidence refute. (Compare Ex. 5 at 1 with Ex. 4 and Ex. 2, Br. at 2, 4.) A process that produces a record that wrong, unreviewed by anyone, is precisely the process that produces erroneous deprivations.*

67. Third, the Government's interest in seizing Petitioner without any prior process is low. Civil immigration detention is not punitive; the only legitimate interests are preventing danger and securing appearance. *Zadvydas*, 533 U.S. at 690. Petitioner presents neither concern. "[A]lthough the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" *R.A.N.O.*, 2026 WL 40507, at *7 (quoting* Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). The burden of providing notice and a hearing is minimal — the Government runs custody hearings every day — while "[t]he costs to the public of immigration detention are 'staggering.'"* Hernandez*, 872 F.3d at 996. This is not the "special instance … where post-deprivation process is all that is due."* Zinermon v. Burch*, 494 U.S. 113, 139 (1990).*

**C. The After-the-Fact Bond Hearing Did Not and Could Not Cure the Violation, and This Court Should Not Order Another One.**

68. Respondents will answer that Petitioner already received a bond hearing. That is no answer. "[A] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Zaitsev*, 2026 WL 1047942, at *7; accord* Zepeda Perez*, 2026 WL 980492, at* 5 ("Post-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process."); *E.G.M. v. Scott*, 2026 WL 914803, at *6 (W.D. Wash. Apr. 3, 2026) ("any post-deprivation remedies … do not cure the constitutional violation"). Such a hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."* E.A.T.-B.*, 795 F. Supp. 3d at 1324.*

69. The Central District has confronted this precise argument and rejected it on facts stronger for the Government than these. In *Mikayelyan*, the petitioner had already received a post-deprivation bond hearing at which the Immigration Judge denied bond — and the court nonetheless granted the writ and ordered release, holding that "the appropriate remedy for the deprivation is release from custody." No. 5:26-cv-01035-SSS-DFM, Dkt. No. 19, at 3–4; accord *Singh v. Noem*, 2026 WL 766228, at *10 (immediate release warranted even though a post-deprivation bond hearing had been provided, because it failed to cure the injury of the unlawful detention itself).*

70. The reason is structural: the injury is the detention. Even if Petitioner were given a flawless hearing tomorrow and released, she "will have already suffered the harm … [of her] potentially erroneous detention." *Domingo v. Kaiser*, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025). Ordering a do-over hearing would ratify the very sequence the Constitution forbids — seize first, justify later — and would leave Respondents free to repeat it tomorrow against the next work-authorized asylum applicant who books a domestic flight. Petitioner therefore does not seek, and does not consent to, an order directing a further bond hearing in lieu of release.*

71. The record here supplies an additional, concrete reason not to send Ms. Sun back for more process: this Court can now see exactly what that process produces. Over ten weeks it produced the same twenty-three words seven times. Ordering another hearing before the same court would order an eighth copy — and the same judge is scheduled to hear her again on September 1, 2026. (Ex. 1.)

**D. Independently, the Hearing Petitioner Received Was Not Individualized and Did Not Satisfy Due Process.**

72. The Fifth Amendment requires that "the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). That relation cannot be assessed in the abstract; it requires an assessment of this person's circumstances. Civil detention is an "extraordinary" deprivation of liberty, *United States v. Salerno*, 481 U.S. 739, 750 (1987), and "[a]ny detention incidental to removal must bear[] a reasonable relation to its purpose," *Hernandez*, 872 F.3d at 990.

**1. A finding that does not vary when the facts vary is not a finding about the facts.**

73. As set out above and documented in Exhibit 3, the same Immigration Judge issued the same one-sentence flight-risk finding — verbatim — to six respondents represented by six different attorneys, on six different records, and then issued it a seventh time to Ms. Sun. Two of the six were signed on a single day, August 21, 2026, for unrelated respondents. The recitation that the hearing was "individualized" is itself pre-printed language that appears in none of this judge's orders in the compendium before July 24, 2026 and in every one after.

74. The Ninth Circuit has told courts what to do with this. A reviewing court takes the agency at its word only "in the absence of any red flags"; "when there is an indication that something is amiss," it should not credit the agency's "use of a 'catchall phrase' to the contrary." *Martinez*, 124 F.4th at 785. Here the catchall is not even a phrase the judge chose; it is a paragraph pre-printed on the form. A generalized assurance that everything was considered cannot substitute for engagement with probative evidence the decision never acknowledges. *Id.* A verbatim match across six unrelated records is not merely a red flag; it is proof that no such engagement occurred.

75. And this record adds something the others did not have. Ms. Sun placed 212 pages of documentary evidence before the Immigration Judge — deeds, vehicle registrations, a lease, a work permit, tax filings, a sponsor's passport and tax return, her son's medical records, five character statements. The order acknowledges none of it. It does not distinguish it, weigh it, or say why it fails. It says the same twenty-three words the same judge had already given to six other people.

76. District courts have granted relief on weaker showings. In *Sales v. Johnson*, the court granted habeas where "the IJ's flight risk finding was not supported by clear and convincing evidence when the government did not present any evidence or even argue the flight risk factor."

323 F. Supp. 3d 1131, 1141 (N.D. Cal. 2018). The record here reflects the same absence: no DHS evidence is identified, because none is cited, because the form provides no place to cite any.

77. Should Respondents answer that the reasons were "orally articulated" into the DAR system, that answer proves the problem rather than solving it. If the articulation was individualized, Respondents can produce it: the order itself states that all DAR recordings "are readily available to both sides" through ECAS. (Ex. 2, Order at 1.) Petitioner respectfully requests that the Court order Respondents to lodge the recording and any transcript of the August 25, 2026 hearing. Absent that, the only articulation before this Court is a sentence the same judge gave to six other people.

**2. The Government was not required to bear — and did not bear — the burden of proof.**

78. Under 8 C.F.R. § 1236.1(c)(8), the default rule places the burden on the noncitizen. But 8 U.S.C. § 1226(a) is silent on who must carry what burden, and this Court "must exercise [its] independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). The allocation is therefore a constitutional question governed by *Mathews*, and all three factors favor placing the burden on the Government by clear and convincing evidence.

79. The private interest is "one of the most elemental of liberty interests," *Hamdi*, 542 U.S. at 529; accord *Addington v. Texas*, 441 U.S. 418, 425 (1979), and Petitioner's confinement has separated her from a minor child in medical treatment. The risk of erroneous deprivation is acute: detained noncitizens cannot readily gather evidence or reach witnesses, *Diouf*, 634 F.3d at 1091–92, and they must prove a negative — that they will not flee — which is "never easy as a matter of proof," *Elkins v. United States*, 364 U.S. 206, 218 (1960). Ms. Sun nevertheless assembled, from inside Adelanto and in under two weeks, 212 pages of documentary evidence. The order mentions none of it. And the Government "has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 993. The Ninth Circuit has required clear and convincing proof from the Government in analogous contexts. *Singh v. Holder*, 638 F.3d at 1203–04; see *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996). Nothing in the August 25 order indicates that the Government bore any burden at all, or produced any evidence at all.

**3. The order announces a conclusion about alternatives to detention without performing any analysis, and never addresses ability to pay.**

80. Due process requires an Immigration Judge to consider a detainee's financial circumstances and the availability of alternative conditions of release before setting or denying bond. *Hernandez*, 872 F.3d at 993–94. "When the [G]overnment determines what bond to set without considering a detainee's financial circumstances, or the availability of alternative conditions of release, there is a significant risk that the individual will be needlessly deprived of the fundamental right to liberty." *Id.* at 993. Petitioner's own bond request put that authority squarely before the Immigration Judge. (Ex. 2, Br. at 6.)

81. The August 25 order does not omit alternatives to detention; it announces a conclusion about them — that no bond would suffice "even if coupled with alternatives to detention" — while identifying not one alternative and explaining nothing about why any would fail. A conclusion recited is not an analysis performed. The order never mentions electronic monitoring, reporting requirements, ICE's Alternatives to Detention program, or supervision by Mr. Grunow, the United States citizen who committed in writing to sponsor her and to provide financial support if needed. (Ex. 2, Br. at 2, 4.)

82. The order likewise says nothing about ability to pay. It identifies no figure Ms. Sun could not have met, because it identifies no figure at all — notwithstanding a documented home, registered vehicles, a business, and a sponsor prepared to help. Denying bond outright without considering financial circumstances or alternatives is independently unconstitutional. *Hernandez*, 872 F.3d at 993–94.

**4. The flight-risk finding is inverted by the governing factors and is entitled to no deference.**

83. Federal habeas courts do not defer to a bond determination that rests on no individualized findings and no clear and convincing evidence. *Sales*, 323 F. Supp. 3d at 1141; *Martinez*, 124 F.4th at 785. The Board's flight-risk factors include fixed address, length of residence, family ties, employment history, manner of entry, record of compliance with immigration obligations, and criminal record. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006); see *Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009). Every factor favors release, and every factor was documented in the record before the Immigration Judge.

84. Fixed address. A home she owns in Arcadia, California, preceded by a leased residence in the same city documented from March 2025. It is the address printed on ICE's own Form I-213 and the address to which USCIS mails her notices. Length of residence. More than two years of continuous, open residence. Family ties. A minor son who lives with her, is receiving ongoing medical treatment, and is a co-applicant on her asylum application, and a United States citizen church elder who has committed in writing to sponsor her. Employment history. A federal Employment Authorization Document valid through December 18, 2029, a business she owns, and a filed federal tax extension. Manner of entry. Inspected and lawfully admitted on a valid B-2 visa, as DHS's own form records. Compliance with immigration obligations. She filed her Form I-589 before her authorized stay expired, appeared for biometrics on July 8, 2024, and has never failed to appear for anything. Criminal record. None — as DHS's own Form I-213 states in terms: "No criminal convictions."

85. Then there is the fact that answers the flight-risk question by itself. Ms. Sun was seized while flying, in her own name, on a domestic ticket, through a TSA checkpoint, into Los Angeles — the city where she lives, works, worships, and is raising her son. A person planning to abscond does not hand a government-issued REAL ID to a federal officer and board a plane to the very jurisdiction where the Government knows she lives. On this record, a finding that Ms. Sun presents a flight risk that no amount of bond and no alternative to detention could mitigate — the most extreme finding available on the bond spectrum — is not merely unsupported. It is inverted.

**E. The Only Adequate Remedy Is Immediate Release.**

86. "[T]he traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. Where the Government has detained a person without the pre-deprivation process the Constitution requires, "the appropriate remedy for the deprivation is release from custody." *Mikayelyan*, Dkt. No. 19, at 4. Courts in this District have ordered release on comparable facts, recognizing that the deprivation of physical liberty is itself irreparable harm. See, e.g., *Jin Liu v. Noem*, No. 5:26-cv-00325-CAS-DTB (C.D. Cal. Jan. 30, 2026); *Tur-Sarksyan v. Bondi*, No. EDCV 26-00696-MWF (C.D. Cal. Feb. 23, 2026).

87. An order directing yet another custody redetermination would not restore what was taken and would not prevent its repetition. The remedy that matches the injury is the writ.

## IX. CLAIMS FOR RELIEF

### COUNT ONE

### Violation of Procedural Due Process — Detention Without Pre-Deprivation Notice and Hearing

### (U.S. Const. amend. V)

88. Petitioner re-alleges and incorporates by reference each preceding paragraph.

89. Petitioner held a constitutionally protected liberty interest in remaining free from physical confinement. Respondents deprived her of that interest on July 31, 2026 without notice, without a hearing, and without review by any neutral decision-maker.

90. No exigency, emergency, or impracticability excused pre-deprivation process. Respondents identified Petitioner in advance from a passenger manifest, knew her name, her address, her pending asylum application, her flight number, and her arrival time, staffed the operation with roughly ten officers, and chose the time and place of the seizure. Notice and a hearing before any arrest were entirely practicable. The violation was complete upon her detention and was not cured by the later bond hearing. The Court should grant the writ and order Petitioner's immediate release.

### COUNT TWO

### Violation of Procedural Due Process — A Non-Individualized Bond Determination

### (U.S. Const. amend. V)

91. Petitioner re-alleges and incorporates by reference each preceding paragraph.

92. Assuming arguendo that a post-deprivation custody hearing could cure the violation alleged in Count One, the hearing Petitioner received was not constitutionally adequate. The August 25, 2026 order makes no factual findings, identifies no evidence, states no bond amount, names no alternative to detention, and says nothing about ability to pay, notwithstanding 212 pages of documentary evidence admitted as Immigration Court Exhibit 2. Its operative sentence is identical, word for word, to orders the same Immigration Judge issued to six unrelated respondents represented by six other attorneys, and its recitation that the hearing was "individualized" is pre-printed boilerplate that appears in none of that judge's orders in the compendium before July 24, 2026.

93. Petitioner was further denied due process because the Government was not required to bear, and did not bear, the burden of justifying her continued detention by clear and convincing evidence, and because the adjudicator did not function as a neutral decision-maker as to her individual circumstances. "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955); accord *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970); *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). The inquiry is objective. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Tumey v. Ohio*, 273 U.S. 510, 532 (1927); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883–84 (2009). The Court should grant the writ and order Petitioner's immediate release rather than order a further hearing.

**COUNT THREE**

**Violation of Substantive Due Process — Detention Untethered to Any Permissible Purpose**

**(U.S. Const. amend. V)**

94. Petitioner re-alleges and incorporates by reference each preceding paragraph.

95. Civil immigration detention may serve only two permissible purposes: preventing danger to the community and securing the noncitizen's appearance at removal proceedings. *Zadvydas*, 533 U.S. at 690. It may not be punitive.

96. Petitioner has no criminal history — ICE's own arrest record states "No criminal convictions" — and has been found by no adjudicator, on any evidence, to be dangerous. She entered lawfully, holds federal employment authorization through 2029, owns her home, is raising a minor son in ongoing medical treatment who is a co-applicant on her asylum application, has a United States citizen sponsor, has never missed an immigration appointment, and has a pending asylum application that gives her every incentive to appear. Her detention is not reasonably related to any legitimate purpose and violates substantive due process. The Court should grant the writ, order her immediate release, and enjoin Respondents from re-detaining her absent constitutionally adequate pre-deprivation process.

**X. PRAYER FOR RELIEF**

WHEREFORE, Petitioner Yahong Sun respectfully requests that this Court:

(1) Assume jurisdiction over this matter;

(2) Declare that Petitioner's detention — effected on July 31, 2026 without notice and without a hearing before a neutral adjudicator prior to the deprivation of her liberty — is unlawful and violates the Due Process Clause of the Fifth Amendment;

(3) Declare that the August 25, 2026 post-deprivation bond hearing did not and cannot cure that violation, and that it independently failed to satisfy due process because it was not individualized, did not place the burden on the Government, and did not consider ability to pay or alternatives to detention;

(4) Issue a Writ of Habeas Corpus and ORDER Respondents to release Petitioner from custody IMMEDIATELY, on reasonable conditions of supervision, restoring the conditions of liberty that existed before her arrest and without imposing any new restraint — including electronic monitoring — absent a subsequent, constitutionally adequate pre-deprivation determination that such a restraint is necessary;

(5) Order Respondents to lodge with this Court the Digital Audio Recording, and any transcript, of the August 25, 2026 bond hearing in *In re Sun, Yahong*, A# 234-540-344;

(6) Order Respondents to file a status report certifying compliance with the order of release within three (3) days of its entry;

(7) Enjoin Respondents from re-detaining Petitioner absent notice and a constitutionally adequate hearing before a neutral adjudicator held prior to any such re-detention;

(8) Enjoin Respondents from transferring Petitioner outside the Central District of California pending resolution of this Petition;

(9) Award Petitioner reasonable costs and attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(10) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: August 27, 2026

By counsel,

/s/ Hovhannes Bayburtski

Hovhannes Bayburtski, Esq.

Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioner because I am Petitioner's attorney. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Executed on August 27, 2026, in Studio City, CA.

/s/ Hovhannes Bayburtski

Hovhannes Bayburtski, Esq.

Attorney for Petitioner